## DAVIS & al. versus MUNCEY.

Where the plaintiff's grantor, being owner of a water privilege, conveyed to the defendant one half the flume connected with the gristmill, with the privilege of drawing water from the mill-dam to carry certain machinery, when the water was not needed for the gristmill; — Held, that the plaintiffs were restricted to the use of the same power required to drive the gristmill at the time of defendant's grant, if necessary to the enjoyment of his rights; that they might use another kind of wheel or wheels, but no more water in *quantity* could be *used* or *lost* through the newly constructed wheels than was required for the use of the mill at the time of the grant.

But the plaintiff's right to recover damages of defendant for using the water when wanted for the gristmill, and *while the water was running over the dam,* cannot be defeated, by showing leakage in another flume connected with the same head, but not connected with the gristmill flume, although one of the plaintiffs had actual control over it.

ON EXCEPTIONS from *Nisi Prius*, APPLETON, J., presiding.

TRESPASS. The charge alleged was for diverting the water from plaintiffs' gristmill, whereby they were deprived of its use and profit.

The right of plaintiffs, to maintain the suit, so far as possession or ownership was concerned, was not disputed. The defendant had no right to the use or control of the gristmill.

A dam was built across Sandy river, and by means of the water so held, a sawmill and gristmill were propelled, and

the machinery in defendant's shop. David Graffan formerly owned the privilege.

Through Graffan, in 1845, the defendant obtained the right to "one half of the flume leading to said shop, with the privilege of drawing water from the mill-dam to carry small circular saws, turning lathe, planing machine, &c., *when the water is not needed for the gristmill.*"

The shop of defendant was just below the gristmill, and his wheel was supplied with water from the flume connected with that which supplies the gristmill.

Between the gristmill flume and the main stream was a ledge over which the water flowed into the gristmill flume in such way, that when the gristmill was in operation, if the defendant's gate was raised, the speed of the gristmill would be much retarded, notwithstanding the water would continue to run over the dam.

Evidence was introduced that there was grinding for about one quarter of the time, and that between October, 1849, and November, 1852, when the gristmill was running, the defendant had his gate up, drawing water from the flume; that thereby, when the water was running over the dam, the speed of the gristmill was diminished so as to render it difficult to grind, and in some instances preventing grinding; and that in numerous instances when the plaintiffs wanted the water to propel their gristmill, on request being made to defendant to shut his gate, he refused.

At the time of Graffan's deed to defendant, the gristmill was propelled by means of *tub wheels;* afterwards other wheels, called "Kendall or centre vent wheels," were put in instead of the tub wheels. The evidence was contradictory as to which kind of wheel required the more water. Some evidence tended to show that the Kendall wheels were not put in the best mode, and that water was wasted by reason of too large a space being left between the wheel and the curb, and by reason of the stop water occasionally being off.

It also appeared that the sawmill flume, which was under the control of one of the plaintiffs, but was not connected with the flume of the gristmill, leaked somewhat.

Davis v. Muncey.

Several instructions were given to the jury, among which were these; *that* if by reason of unusual leakage and defects, enough water ran to waste, through want of ordinary care on the part of plaintiffs, to propel defendant's wheel, the plaintiffs could not recover; *that* if the Kendall wheels in the manner in which they were used did not require or draw, including the leakage, more water than the tub wheels, then so far as this part of the case was involved, the plaintiffs might recover; but if the leakage from the saw-mill was occasioned by neglect and want of ordinary care on part of plaintiffs, that they could not throw on defendant losses occasioned by their neglect, or that of either of them, provided he used and wasted enough in the whole to equal the amount required for the full enjoyment of the mill in 1845.

The verdict was for defendant, and the plaintiffs excepted to the instructions.

*J. S. Abbott*, for plaintiffs.

*J. H. Webster*, for defendant.

CUTTING, J. — As nearly as it can be ascertained from the evidence reported, and the three deeds only exhibited, it appears that David Graffan originally owned the whole water power, and having built the dam and gristmill, subsequently, on Dec. 27, 1845, conveyed to the defendant, " the land whereon the east half of the shop stands, situated below his gristmill, with one-half of the flume to said shop, with the privilege of drawing water from the mill-dam to carry small circular saws, &c., "*when the water is not needed for the gristmill, &c.*"

That Davis N. Graffan, claiming under David Graffan, on June 23, 1849, conveyed to the defendant one undivided fourth part of the shop and land on which it stands, &c., " *reserving the preference of the water for the gristmill.*"

That the plaintiffs by deed or otherwise were in possession of, and jointly occupied the gristmill, claiming either directly or indirectly under David Graffan.

That the defendant's shop is situated just below the gristmill; his wheel is propelled by water from a flume, below,

but connected with the gristmill flume; that between the latter flume and the main stream is a ledge, over which the water flowed into the gristmill flume in such way, that when the gristmill was in operation, if defendant's gate were raised, the speed of the gristmill would be much retarded, notwithstanding the water would continue to run over the top of the dam; and it was for the defendant's use of the water under such circumstances that this action was brought.

That the gristmill, on Dec. 27, 1845, the date of the deed from David Graffan to the defendant, was operated by means of a tub wheel; that afterwards the Kendall wheel was substituted, and there was evidence tending to show that the former drew less water than the latter, and the contrary. And that in 1849 the dam was carried away and subsequently rebuilt, and the expenses, by a reference, was apportioned among the several interests, and seven per cent. was awarded as the defendant's share.

The foregoing are the principal facts that elicited the rulings of which the plaintiffs complain.

By the deeds from David and Davis N. Graffan, the defendant acquired the privilege of drawing water from the mill-dam to carry small circular saws, &c., when it was not needed for the gristmill; and it is not pretended that he used the water for any other purpose than that mentioned in the deeds, but it is alleged that he used it when needed for the gristmill. If the defendant was restricted in the use of the water, so also were the plaintiffs' grantors, who could not afterwards make use of that which they had previously conveyed, and they could not use, to the detriment of their grantee, more power than was necessary to propel the tub wheel in use at the time of the grant, although they might use the *same quantity* in operating the gristmill by any other wheel or wheels; otherwise, the gristmill might exhaust the whole water in the flume and leave none for the shop. And it was incumbent on the plaintiffs so to have constructed their wheel and its curbs, that no more water

Davis v. Muncey.

should pass through or by it, than when the defendant obtained his grant. If the plaintiffs in either mode diminished the water in the flume, to the amount conveyed to the defendant, they have in this suit no reason to complain, and such in substance was the ruling of the Judge in that particular.

It does not appear that the sawmill flume, controlled by Davis, one of the plaintiffs, had any connection with that of the gristmill, or that it was not entirely distinct and separate from it, and from the plan exhibited to us, it is so situaated. Such being the fact, while the water was continually flowing over their common dam, it is difficult to perceive how any leakage from Davis's flume could diminish the quantity of water in that used in common by these parties. But the case finds that " it appeared that the sawmill flume, which was under the control of Davis, one of the plaintiffs, leaked some; upon this fact and the foregoing evidence, the Court instructed the jury that if the leakage from the sawmill was occasioned by neglect and want of ordinary care on part of plaintiffs, that plaintiffs could not throw on defendant losses occasioned by their neglect, or that of either of them, provided he used and wasted enough in the whole to equal the amount required for the full enjoyment of the mill in 1845."

According to this instruction the plaintiffs are made accountable for all the water which leaked through the Davis mill, when there is no evidence that if his flume had been perfectly tight, it ever would have found its way into the gristmill flume, but rather, like a portion of the common mass, would have been obstructed by the ledge; consequently the plaintiffs were no more liable for such leakage, than they were for the water that passed off over the dam.

*The exceptions are sustained, verdict*
*set aside and a new trial granted.*

SHEPLEY, C. J., and TENNEY and RICE, J. J., concurred.